

**ORDERED in the Southern District of Florida on July 15, 2020.**

_____
A. Jay Cristol, Judge
United States Bankruptcy Court
_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                                                                          Chapter 11

| | |
|---|---|
| **AMERICA-CV STATION GROUP, INC,** | Case No. 19-16355-BKC-AJC |
| **CARIBEVISION HOLDINGS, INC.,** | Case No. 19-16359-BKC-AJC |
| **CARIBEVISION TV NETWORK, LLC** | Case No. 19-16976-BKC-AJC |
| **AMERICA CV NETWORK, LLC** | Case No. 19-16977-BKC-AJC |
| Debtors. | (Jointly Administered Under Case No. 19-16355) |

_____/

**MEMORANDUM OPINION AND ORDER DENYING**

**(A) EXPEDITED MOTION TO (I) RECONSIDER THE CONFIRMATION ORDER, (II) STRIKE ORDER [DE. 271] AND (III) DENY EMERGENCY MOTION TO MAKE NON-MATERIAL MODIFICATIONS TO DEBTORS' PLANS**

**AND**

**(B) MOTION TO (1) STRIKE NOTICE OF OCCURRENCE OF EFFECTIVE DATE AND (2) TO PREVENT DEBTORS FROM MOVING TO SUBSTANTIAL CONSUMMATION OF PLANS**

**THIS MATTER** came before the Court for a non-evidentiary hearing on **June 17, 2020 at 2:30 p.m.** (the "Hearing") upon (A) the *Expedited Motion (1) to Reconsider the Confirmation*

*Order, (2) to Strike Order [DE 271], and (3) to Deny Emergency Motion to Make Non-Material Modifications to Debtors' Plans* [DE 275](the "Motion to Reconsider"), and (B) the *Motion (1) to Strike Notice of Occurrence of Effective Date, and (2) to Prevent Debtors from Moving to Substantial Consummation of Plans* [DE 284] (the "Motion to Strike Effective Date") filed by Ramon Diez Barroso, Pegaso Television Corp, and Emilio Braun (collectively, the "Pegaso Equity Holders"). The Court, having reviewed and considered the Motion to Reconsider, the Motion to Strike Effective Date and the Response and Objection [DE 300] (the "Objection") to the same filed by the above-captioned reorganized debtors AMERICA-CV STATION GROUP, INC., CARIBEVISION HOLDINGS, INC., AMERICA-CV NETWORK, LLC and CARIBEVISION TV NETWORK, LLC (collectively, the "Reorganized Debtors" or the "Debtors" as applicable), having heard argument of counsel for the respective parties and considered the views of creditors of the Reorganized Debtors and the Office of the United States Trustee expressed at the Hearing, and having reviewed the record of these Chapter 11 cases, denies the Pegaso Equity Holders' Motion to Reconsider and the Motion to Strike Effective Date for the reasons more fully explained herein.

## BACKGROUND

1. On May 14, 2019, AMERICA-CV STATION GROUP, INC., CARIBEVISION HOLDINGS, INC., and on May 28, 2019, AMERICA-CV NETWORK, LLC and CARIBEVISION TV NETWORK, LLC (respectively and collectively, the "Petition Date"), each filed a voluntary petition in this Court for relief under Chapter 11, title 11, United States Code (the "Bankruptcy Code").

2. On February 26, 2020, the Debtors filed the following plans of reorganization (collectively, the "Plans"): (I) *Chapter 11 Plan Of Reorganization Proposed By America-CV*

*Station Group, Inc.* (the "Station Group Plan"), (II) *Chapter 11 Plan Of Reorganization Proposed By Caribevision Holdings, Inc.* (the "Holdings Plan"), (III) *Chapter 11 Plan Of Reorganization Proposed By America-CV Network, LLC* (the "America-CV Plan"), and (IV) *Chapter 11 Plan Of Reorganization Proposed By Caribevision TV Network, LLC* (the "Network Plan"). On March 31, 2020, the Debtors filed their *First Amended Joint Disclosure Statement in Support of the Debtors' Plans of Reorganization* [ECF No. 156] (the "Disclosure Statement").

3. Under the Plans as originally proposed, the "old" prepetition equity interests under the Holdings Plan and the Network Plan were to be extinguished and new equity interests representing 100% of the new equity in Caribevision Holdings, Inc. and Caribevision TV Network, LLC were to be issued in exchange for the Equity Contribution in the amount of $500,000 and the Exit Financing in the amount of $1.6 million. The following four parties were to make the Equity Contribution and fund the Exit Financing, and in exchange receive the following percentages of the new equity interests to be issued under the Holdings Plan and the Network Plan: (i) Vasallo TV Group, LLC was required to contribute an amount equal to 34.2% of the Equity Contribution and the Exit Financing and receive 34.2% of the new equity interests, (ii) Mr. Ramon Diez Barroso was required to contribute an amount equal to 50.1% of the Equity Contribution and the Exit Financing and receive 50.1% of the new equity interests, (iii) Pegaso Television Corp. was required to contribute an amount equal to 11.9% of the Equity Contribution and the Exit Financing and receive 11.9% of the new equity interests, and (iv) Mr. Emilio Braun was required to contribute an amount equal to 3.8% of the Equity Contribution and the Exit Financing and receive 3.8% of the new equity interests. [D.E. 156 at 26].

4. The Plans set forth a process for the Debtors to obtain aggregate funding from the Debtors' equity interest holders and to reestablish the equity ownership in the parent companies.

The Pegaso Equity Holders argue that the Joint Disclosure Statement set forth only two conditions for them to obtain their "new equity" upon the Effective Date: (1) contribute their allocated share of $500,000.00, defined in the Plans as the "*Equity Contribution*" and (2) execute a credit agreement in the maximum amount of $1,600,000 to finance the Plans, defined in the Plans as "*Exit Financing*," which would obligate the equity interest holders in their respective ownership percentages as set forth in the Plans. *See* [D.E. 125-129].

> 5. Each of the Plans set forth the funding for the *Equity Contribution* as follows:
>
>> "*Equity Contribution*" means an amount equal to $500,000 being contributed in the aggregate into the Debtor's Estate and the Estates of the Affiliated Debtors on the **Effective Date** by each of the following Persons in the following amounts: (i) Ramon Diez-Barroso in the amount of $250,500, (ii) Vasallo TV Group, LLC in the amount of $171,000, (iii) Pegaso Television Corp. in the amount of $59,500 and (iv) Emilio Braun in the amount of $19,000, which Equity Contribution shall be used to fund the Plan and the Other Plans for the Affiliated Debtors.

[D.E. 125 at ¶(A)(39)] (emphasis added); *see also* [D.E. 126 at ¶(A)(39)]; [D.E. 127 at ¶(A)(39)]; [D.E. 128 at ¶(A)(39)]; [D.E. 156 at pp. 26, 33]. The Joint Disclosure Statement described the *Exit Financing* as follows:

> *On or as soon as reasonably practicable following the Effective Date*, the Reorganized Debtors *will consummate the Exit Financing with the Exit Financing Lender*, which line of credit will be in accordance with the terms of the Plans and of the Exit Financing Documents. The Reorganized Debtors shall be permitted to utilize the proceeds of the Exit Financing to fund their business operations from and after the Effective Date, including their obligations under the Plans.

[D.E. 156 (C)(1)] (emphasis added). The Plans and Joint Disclosure Statement defined the "Effective Date" as a date that is not later than ten (10) Business Days after the Confirmation Order becomes a Final Order.

6. On April 13, 2020, the Court entered its *Order (A) Approving First Amended Joint Disclosure Statement On A Final Basis; (B) Authorizing Solicitation Of Votes On Plans Of Reorganization; (C) Approving Solicitation Procedures; And (D) Scheduling A Hearing On Confirmation Of The Plans Of Reorganization* (the "Disclosure Statement Order") [ECF No. 159].

7. Pursuant to the Disclosure Statement Order, confirmation of the Plans was scheduled for Thursday, May 28, 2020 at 2:00 p.m.

8. As required by the Disclosure Statement Order, on Monday, May 25, 2020, the Debtors filed their *Joint Certificate of Proponents of Plans on Acceptance of Plans, Report on Amount to be Deposited, Certificate of Amount Deposited and Payment of Fees* (the "Ballot Report") [ECF No. 239]. In the Ballot Report, counsel to the Debtors certified to this Court that he had monies on deposit in its attorneys' trust account in an amount equal to $500,000, the amount required to be contributed as the "Equity Contribution" under the Plans to enable the Plans to be confirmed.

9. Also, on May 25, 2020, the Debtors filed the *Declaration of Jorge Salas in Support of Debtors' Plans of Reorganization Dated February 26, 2020* [ECF No. 240] (the "Salas Declaration"). The Salas Declaration proffered the testimony of the Debtors' chief financial officer in support of the elements of 11 U.S.C. § 1129(a) and (b) necessary to confirm the Plans.

10. On Tuesday, May 26, 2020, the Debtors filed the *Debtors' Emergency Motion to Make Non-Material Modifications to Debtors' Plans of Reorganization Dated February 26, 2020* (the "Motion to Modify") [ECF No. 248]. The Motion to Modify sought to issue the new

5

equity interests under the respective Plans solely to Vasallo TV Group, LLC, owned by Carlos Vasallo, a longtime equity holder.

11. The Pegaso Equity Holders were not served with the Motion to Modify. The record indicates they had not made a formal appearance in the case prior to confirmation nor did they request service by electronic means during the cases. The Pegaso Equity Holders admit that, at some point prior to the Confirmation Hearing, they were made aware of the Motion to Modify, though perhaps not the specific terms, because they admittedly requested Debtors' counsel to seek a continuance of the Confirmation Hearing.

12. On Thursday, May 28, 2020, the Court held the Confirmation Hearing on the Plans (the "Confirmation Hearing"). The Pegaso Equity Holders did not appear at the Confirmation Hearing and no one sought to continue the hearing.

13. At the duly scheduled and noticed Confirmation Hearing, the Debtors presented their case in support of confirmation of the Plans, including describing the events leading to confirmation, announcing the resolution of all remaining objections of creditors to confirmation of the Plans, admitting the Ballot Certificate and Salas Declaration into evidence in support of confirmation of the Plans, presenting the Motion to Modify to the Court for approval as a pre-condition to confirmation of the Plans and then proceeding to seek confirmation of the Plans, including through cramdown on certain classes of old prepetition equity interests.

14. The Debtors informed the Court that they needed to modify their respective Plans because the Pegaso Equity Holders failed to timely satisfy the contribution requirements under the Plan, thereby requiring Vasallo TV Group, LLC to contribute 100% of the Equity Contribution and fund 100% of the Exit Financing. Under the proposed modifications, 100% of the new equity interests would be issued to Vasallo TV Group, LLC in exchange for Vassallo

TV Group, LLC making 100% of the Equity Contribution and providing 100% of the Exit Financing.

15. Based upon the representations of counsel at the Confirmation Hearing, and no objections having been raised, the Motion to Modify was granted. 11 U.S.C. §1127.

16. Thereupon, the Debtors sought to cramdown the two impaired classes of old prepetition equity interests under the Holdings Plan and the Network Plan pursuant to 11 U.S.C. §1129(b)(2)(C). The Debtors were required to seek cramdown on the equity classes under the Holdings Plan and the Network Plan because the old prepetition equity interests in those Debtors were being extinguished under the Holdings Plan and the Network Plan. As such, the two equity classes in question were impaired and deemed to have rejected the Holdings Plan and the Network Plan under Section 1126(g) of the Bankruptcy Code.

17. At the Confirmation Hearing, the Court approved the Debtors' request to cramdown the two impaired prepetition equity classes under the Holdings Plan and the Network Plan.

18. On June 2, 2020, the Court entered its Order Granting the Motion to Modify [DE 271].

19. On June 3, 2020, the Court entered its Order Confirming the Plans [DE 272].

20. On June 5, 2020, the Pegaso Equity Holders filed the Motion to Reconsider pursuant to 11 U.S.C. §105. The Pegaso Equity Holders contend that they timely performed the only two primary responsibilities set forth in the Plans necessary for them to obtain the issuance of new equity in the Reorganized Debtors in the same percentages as their old equity interests held by them pre-confirmation. It is undisputed that they wired $329,000 from Mexico, receipt of which was confirmed in Miami on Tuesday, May 26, 2020; May 25, 2020 was a federal bank

7

holiday. These funds were sent to the Debtors' operating account. It is further undisputed that the Pegaso Equity Holders wired a *second* payment in the amount of $329,000 to the trust account of Paul Battista, counsel for the Debtors in these combined and reorganized cases. These funds were wired and received by May 27, 2020. Each of those transactions was cleared prior to the Confirmation Hearing.

21. The Pegaso Equity Holders do not dispute they had actual and formal notice of the Plans and Confirmation Hearing, but did not appear at the hearing.

22. The Pegaso Equity Holders did not seek a stay of the Confirmation Order or any other order of the Court in connection with confirmation of the Plans or the Order Granting the Motion to Modify.

23. On June 9, 2020 and in connection with substantial consummation of the Plans, the Debtors filed their Notice of Occurrence of Effective Date of Debtors' Plans of Reorganization, Dated February 26, 2020, as Modified [DE 280].

24. Pursuant to the Plans, substantial consummation of the Plans required, among other things, that the Debtors consummate the Romay Settlement that was the cornerstone of the Plans, that the Debtors pay an amount equal to $1,550,000 to the Romay Parties pursuant to the Plans and obtain releases, and that the Debtors pay all of the Cure Claims in the aggregate amount of $307,105 and the allowed Administrative Claims pursuant to each Plan.

25. On June 10, 2020, the Pegaso Equity Holders filed their Motion to Strike Effective Date [DE 284]. They seek an order striking the Debtors' Notice of Effective Date in its entirety pursuant to the Court's equitable powers under section 105 of the Bankruptcy Code. In the alternative, the Pegaso Equity Holders ask this Court to find that the Notice of Effective Date was equitably tolled or moot and to estop the Debtors from obtaining substantial consummation

of the Plans until after the Court ruled on the Reconsideration Motion. Notwithstanding the foregoing relief requested, the Pegaso Equity Holders have repeatedly indicated that they do not oppose confirmation and request limited and narrow relief through the Reconsideration Motion and Motion to Strike, namely the allocation and issuance of the new equity interests in the Reorganized Debtors post-confirmation to the Pegaso Equity Holders.

26. On June 16, 2020, the Pegaso Equity Holders filed a Notice of Filing Declaration of Emilio Braun [DE 304] in support of the Motion to Reconsider (the "Braun Declaration").

27. Despite the existence of disputed facts, the Court believes the issues raised in the Motion to Reconsider and Motion to Strike Effective Date can be decided as a matter of law.

## LEGAL ANALYSIS

### A. Rule 59(e) Standard.

The Pegaso Equity Holders filed their Reconsideration Motion pursuant to Fed.R.Civ.P. 59(e), made applicable in bankruptcy by Fed.R.Bankr.P. 9023. Motions for reconsideration of a bankruptcy court order are generally treated as motions to alter or amend under Fed. R. Civ. P. 59(e). *In re Investors Florida Aggressive Growth Fund, Ltd.*, 168 B.R. 760, 768 (Bankr. N.D. Fla. 1994). A court may grant a Rule 59(e) motion to alter or amend the judgment on several grounds: (1) the judgment is based upon manifest errors of law or fact (2) there is newly discovered or previously unavailable evidence; (3) amendment is necessary to prevent manifest injustice; or (4) there is an intervening change in the controlling law. *In re Olivares*, Case No.: 16-16959-LMI, 2017 WL 3638198, at *2 (Bankr. S.D. Fla. Feb. 9, 2017). This standard applies to motions to "alter, amend, or vacate" a confirmation order pursuant to Fed. R. Bankr. P. 9023, incorporating Fed. R. Civ. P. 59. *See, e.g.*, *In re KMC Real Estate Investors, LLC*, 531 B.R. 758, 764 (S.D. Ind. 2015).

The decision to grant or deny a Rule 59(e) motion is entrusted to the sound judgment of the trial court and may be reversed only for an abuse of discretion. *Garcon v. United Mut. of Omaha Ins. Co.*, 779 Fed. Appx. 595, 600 (11th Cir. 2019). The Eleventh Circuit Court of Appeals has held that "the only grounds for granting a motion to alter or amend a judgment under Rule 59(e) are newly discovered evidence or manifest errors of law or fact." *Garcon v. United Mut. of Omaha Ins. Co.*, 779 Fed. App'x 595, 601 (11th Cir. 2019) (citing *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007); *see also In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999); *Shuler v. Garrison*, 718 Fed.App'x 825, 828 (11th Cir. 2017); *Beepot v. JP Morgan Chase Nat. Corp. Services, Inc.*, 626 Fed.App'x 935, 938 (11th Cir. 2015); *Hamilton v. Sec'y, Florida Dept. of Corr.*, 793 F.3d 1261, 1266 (11th Cir. 2015). Bankruptcy courts in Florida have adopted this standard. *In re Ettus*, 596 B.R. 405, 414 (Bankr. S.D.Fla. 2018); *In re Strunk*, 8:07-BK-7297-KRM, 2016 WL 675819, at *3 (Bankr. M.D.Fla. Feb. 18, 2016). *In re DeMasi*, 529 B.R. 338, 344 n.29 (Bankr. M.D.Fla. 2015); *In re Hanson*, 526 B.R. 916, 918 (Bankr. M.D.Fla. 2015).

A Rule 59(e) motion may not be used "to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Grange Mut. Cas. Co. v. Slaughter*, 958 F.3d 1050, 1059 (11th Cir. 2020). In a Rule 59(e) motion, the movant has the burden of showing that the Court committed a manifest error in law or in fact. *In re Parikh*, 397 B.R. 518, 523 (Bankr. E.D.N.Y. 2008) ("[a] motion for reconsideration [under Rule 59(e) should be granted sparingly and in limited circumstances") (citing, *inter alia*, *In re Kellogg,* 197 F.3d 1116 (11th Cir. 1999); *In re Tarrer,* 273 B.R. 724 (Bankr. N.D. Ga. 2001)); *In re Bell*, 195 B.R. 818, 822 (Bankr. S.D.Ga. 1996). A "manifest error" is not the same as a disagreement with the Court's ruling. *In re Olivares*, 16-16959-LMI, 2017 WL 3638198, at *2 (Bankr. S.D.Fla. Feb. 9,

10

2017). It is an error "that is plain and indisputable, and that amounts to a complete disregard for the controlling law or the credible evidence in the record." *All Underwriters Subscribing to Policy of Ins. No. B0621MMILSYB15055 v. Rika Boats Ltd.*, No. 16-20498, 2017 WL 6947441, *2 (S.D.Fla. Oct. 13, 2017).

The Pegaso Equity Holders request this Court: (1) reconsider and deny the Motion to Modify, and thus strike the Modification Order [D.E. 271]; (2) strike any language in the Confirmation Order [D.E. 272] affecting the modifications requested in the Motion to Modify; (3) require the Debtors to revise the Confirmation Order consistent with the pre-modification Plans and Joint Disclosure Statement; (4) strike the Notice of Effective Date [D.E. 284] as it relates to the issuance of equity interests pursuant to the modified Plans; and (5) enter a revised Confirmation Order which preserves, protects, and grants the Pegaso Equity Holders the new equity interests under the Plans and Joint Disclosure Statement.

### B. **No Newly Discovered Evidence or Manifest Error of Law or Fact Exists.**

The Pegaso Equity Holders do not allege any "newly discovered evidence" in support of their motions. They allege that, had the Court known the Motion to Modify was not served upon them, it would not have granted the Motion to Modify. However, under the circumstances herein, the Court does not consider the alleged lack of notice of the Motion to Modify to be "newly discovered evidence" justifying reconsideration. The Court further finds no manifest error of law or fact in granting the Motion to Modify and confirming the Plans. The Pegaso Equity Holders claim that they were denied due process by Debtors' failure to serve the Motion to Modify upon them. They contend they did not have notice of the modifications proposed in the Motion to Modify and lost their valuable pre-petition equity interests by such modifications, in an act of wrongful conversion by the Debtors' chief executive officer, Carlos Vasallo and his

11

related entities. *See* Motion to Reconsider at ¶32. They argue they did everything possible, consistent with the Plans, to preserve their rights to the new equity. Notwithstanding the seriousness of the allegations, the Court believes the facts in this case do not justify reconsideration of the Court's prior Orders.

Pursuant to Section 1127 of the Bankruptcy Code, a plan proponent may modify a plan at any time before confirmation so long as the plan, as modified, satisfies the requirements of 11 U.S.C. §§1122 and 1123, and the proponent of the modification complies with 11 U.S.C. §1125. In addition, with respect to modifications made after acceptance of a plan but prior to confirmation, Bankruptcy Rule 3019 provides, in relevant part:

> [A]fter a plan has been accepted and before its confirmation, the proponent may file a modification of the plan. If the court finds after hearing on notice to the trustee, any committee appointed under the Code, and any other entity designated by the court that the proposed modification does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modification, it shall be deemed accepted by all creditors and equity security holders who have previously accepted the plan.

Fed. R. Bankr. P. 3019(a).

Here, the Pegaso Equity Holders assert that the modifications made to the Plans were "material" and "adverse" to them as holders of prepetition equity interests in two of the Debtors, Caribevision Holdings and Caribevision TV Network. *See* Motion to Reconsider at ¶33. As a result, the Pegaso Equity Holders argue they had a voting right under the Plans as members of a "Voting Class," which was taken away by the Debtors' Motion to Modify. *Id.* However, the Court believes the issue is not whether the modifications to the Plans were material and adverse to the holders of the old pre-petition equity interests under the Holdings Plan and the Network Plan, as those equity classes were ***already impaired*** under the Plans, prior to any modifications, and ***were already deemed to have rejected such Plans*** pursuant to 11 U.S.C. §1126(g).

Therefore, the Pegaso Equity Holders did not have a voting right under the Holdings Plan or the Network Plan, and therefore no voting rights were taken away as a result of the Motion to Modify.

Pursuant to the terms of the Holdings Plan and the Network Plan, the "old" pre-petition equity (including that held by the Pegaso Equity Holders) was already being completely extinguished under the Plans by cramdown, and "new" equity was being issued to those persons/entities who were to make the Equity Contribution ($500,000) to the Reorganized Debtors **and** commit to provide the Exit Financing ($1,600,000) to the Reorganized Debtors. The Pegaso Equity Holders assert they were thwarted in their attempt to contribute new equity because the deadline for the new equity contribution was arbitrarily changed by Debtors' counsel from the Effective Date pursuant to the Plans to a date prior to the filing of the Ballot Report on May 25, 2020. They contend this arbitrary deadline effectively caused their longstanding equity interests to be extinguished.

However, these assertions belie the confirmation process. The Disclosure Statement Order required Debtors' counsel to file the Ballot Report by May 25, 2020, which was a banking holiday. As such, the Equity Contribution needed to be funded into the trust account of Debtors' counsel by May 25, 2020, failing which Debtors' counsel would not have been able to certify the existence of sufficient funds to proceed with confirmation, as required by the Court. Although the Pegaso Equity Holders funded an amount equal to $329,000 to the Debtors' bank account on or about May 26, 2020 and a second $329,000 to the trust account of Debtors' counsel on or about May 27, 2020, by then, the Ballot Report was already filed in accordance with the Court's Order, certifying there was already sufficient new equity to confirm the Plans, exclusive of the funds provided by the Pegaso Equity Holders on and after May 26, 2020.

The law is clear that modifications to a plan only require further disclosure and re-solicitation in respect of those parties who previously voted for the Plans. *See In re Nat'l Truck Funding LLC*, 588 B.R. 175, 178 (Bankr. S.D.Miss. 2018). Because the applicable classes of pre-petition equity interests (including the Pegaso Equity Holders) were deemed to have rejected the Holdings Plan and the Network Plan under section 1126(g) of the Bankruptcy Code, the Pegaso Equity Holders were not entitled to any further disclosure or re-solicitation in connection with the Plans, as a matter of law. Accordingly, the Court finds no manifest error of law in granting the Motion to Modify.

*Nat'l Truck Funding* is instructive on the issues before the Court. 588 B.R. 175. In *National Truck,* the court confirmed a chapter 11 plan of reorganization over objections that certain modifications to that plan were "material" and required re-solicitation. *See, e.g.*, *id.* at 177-78. The objecting creditor argued (A) that the proposed modifications resulted in an adjustment to its secured and unsecured claims; and (B) the plan modifications were insufficiently noticed because they were filed the Friday before a long weekend with confirmation set for the following Tuesday. *Id.* In rejecting the creditor's arguments, the Court first noted that the creditor cited no case in which a plan modification was material as to a creditor, like the objecting creditor that had rejected the plan. *Id.* at 178-79. In reaching this conclusion, the court stated that "[n]umerous courts have held that further disclosure and re-solicitation of votes on a modified plan is only required when the **modification** materially and adversely affects parties **who previously voted for the plan**". *Id.* at 179 (citing *In re Art & Architecture Books of the 21st Century*, 2:13-BK-14135-RK, 2016 WL 1118743, at \*5 (Bankr. C.D. Cal. Mar. 18, 2016)).

The Pegaso Equity Holders assert that they were denied due process because they were not formally served with the Motion to Modify, which was filed two (2) business days prior to the Confirmation Hearing.  A review of the record indicates that, despite their claim they hold very valuable pre-petition equity interests in the Debtors, no lawyer for the Pegaso Equity Holders made an appearance in these Chapter 11 cases until after the Confirmation Hearing and none of the Pegaso Equity Holders elected to receive electronic notification of filings in this case.  The Pegaso Equity Holders admitted they received noticed of the Confirmation Hearing, yet made no appearance at the Confirmation Hearing, personally or through counsel, notwithstanding the possibility that modifications may be made at the time of the hearing, as expressly stated in the Plans.

Bankruptcy Rule 3019(a) provides that the "*trustee, any committee appointed under the Code, and any other entity designated by the court*" are entitled to notice of a hearing on modification of a plan, unless a party actually voted to accept a plan and the proposed modification materially and adversely changes the treatment proposed to such party.  The Court concludes that the Pegaso Equity Holders, who were deemed to have rejected the Plans, were therefore not denied due process.  FRBP 3019(a).  The undisputed facts are that the Pegaso Equity Holders were deemed to have rejected the Plans as originally proposed and, as such, were not entitled to further disclosure or re-solicitation under 11 U.S.C. §1127 or notice of the hearing on the modifications to the Plans under Bankruptcy Rule 3019(a).

Where a creditor has voted to reject the plan, that creditor lacks standing to object to the plan's modification. *See In re Simplot*, 2007 WL 2479664, at *13 (Bankr. D. Idaho Aug. 28, 2007). In *Simplot*, the bankruptcy court rejected a dissenting creditor's argument that more disclosure was necessary to the debtor's creditors because the dissenting creditor "lacked

15

standing to object" to the modifications at issue as the creditor rejected the prior plans of the debtor. Because additional disclosure about the modification would not have affected its vote, the creditor in *Simplot* was not aggrieved by the allegedly inadequate disclosure. *Id.* at *13. The same is true for the Pegaso Equity Holders in the present case. Like *National Truck* and *Simplot*, the Pegaso Equity Holders were deemed to have rejected the Plans and therefore lacked standing to object to the modification of the Plans. *See also, KBC Bank, N.V. v. Capitol Lakes, Inc.*, 2016 WL 5394767, at *8 (W.D. Wis. Sept. 27, 2016), (district court on appeal rejected bank creditor's argument that the debtors' failure to disclose an amended plan was improper, holding "If the banks had voted to accept a prior version of the plan, and then debtor had modified the plan without providing an additional disclosure, the banks' argument might have some merit, but that is not the case here. Instead, the banks *rejected* the Third Amended Plan, and, therefore, the banks lack standing to challenge the Fifth Amended Plan on the basis that it was not disclosed.").

The bankruptcy court's ruling on a plan modification in the *Kmart* Chapter 11 case is also instructive. In *In re Kmart Corp.,* an objection was raised to the notice provided for a plan modification under Bankruptcy Rule 3019. 2006 WL 952042, at *28 (Bankr. N.D. Ill. Apr. 11, 2006). The court specifically held that if the entities listed in Bankruptcy Rule 3019 received notice, "there was no violation of the rule," although this "d[id] not necessarily dispose of due process issues." *Id.* The court noted that (as here) the hearing on the modification took place at the confirmation hearing, and (also as here) none of the objectors had complained they did not receive notice of the confirmation hearing. The court observed that:

> Courts have recognized that modifications may be proposed a very short time prior to - and in appropriate circumstances even at - the confirmation hearing and that the hearing on adverse change in treatment under Rule 3019 may be combined with the hearing on confirmation of the plan.

*Id.* Also like this case, the *Kmart* court noted that the objectors previously had received notice of

16

the debtor's right to modify the plan at any time before the hearing. *Id.* at *30.

The Court observed that the record in these Chapter 11 cases reflect that the Debtors served the Motion to Modify via CM/ECF [ECF No. 248]. Had the Pegaso Equity Holders filed a notice of appearance at any time during these cases or requested to be placed on the service list through the Court's electronic website, they could have received a copy of the as-filed Motion to Modify too. They did not do so.

The court in *In re Calpine Corp.*, 05-60200 (BRL), 2008 WL 207841 (Bankr. S.D.N.Y. Jan. 24, 2008) highlighted this important point. In *Calpine*, shareholders asserting objections to the debtor's plan (who had previously voted against the plan) moved for reconsideration of both a plan confirmation order and an order permitting certain modifications thereto. *Id.* at *3. In those proceedings before the bankruptcy court, shareholders argued that the modifications to the Plan were material and that there was no notice of the plan modifications or meaningful opportunity for the objecting shareholders to be heard. *Id.* The *Calpine* court stated:

> As noted by this Court in its bench ruling denying the Reconsideration Motion on January 14, 2008, the objecting shareholders are sophisticated investors who purchased post-petition over 5 percent of the Debtors' common stock between March and September 2007, when the Debtors were in the early stages of the Plan confirmation process. Despite the **size of their investments**, **the risks involved**, **the existence of notice of the confirmation hearing and all other applicable deadlines**, the objecting shareholders as a **matter of volition** did not participate in the confirmation process and despite their acquired stake, **apparently did not monitor the Chapter 11 Cases, nor request electronic notice**. The objecting shareholders, like any interested party, had substantial notice and opportunity to participate in the discovery and confirmation process. Other interested parties were hyperactive in this part of the proceedings. Having failed to participate in the process, the Court found the request for a 'do over' inappropriate and, accordingly, for the reasons set forth in this Court's comprehensive bench ruling, denied the Reconsideration Motion.

*Id.* (emphasis added).

In the present case, the Pegaso Equity Holders made a similar decision. Despite having some notice of the Motion to Modify based on their admitted request to Debtors' counsel to continue the Confirmation Hearing, the Pegaso Equity Holders chose not to make an appearance at the Chapter 11 Confirmation Hearing, or at any time prior to the confirmation. Based on the foregoing, the Court does not believe the Pegaso Equity Holders have satisfied their burden to justify reconsideration of the Order granting the Motion to Modify or the Confirmation Order.

### C. Motion to Strike Effective Date

The Court concludes that the Motion to Strike Effective Date was not timely and is procedurally improper. The Motion to Strike Effective Date was filed <u>after</u> the Debtors substantially consummated the Plans and filed their Notice of Occurrence of Effective Date of Debtors' Plans of Reorganization, Dated February 26, 2020, as Modified [DE 280]. The Court's docket indicates that the Pegaso Equity Holders did not seek or obtain a stay of the effective date and therefore cannot be heard to complain that the Debtors proceeded to substantially consummate the Plans.

It appears that the crux of the dispute is between two groups of prepetition equity holders in the Debtors. Such dispute should not impact confirmation of the Plans, the rights of creditors under the Plans or the requirement that the Debtors continue to comply with the Plans. Thus, it is

**ORDERED AND ADJDUGED as follows:**

1. The Motion to Reconsider is DENIED.

2. The Motion to Strike the Effective Date is DENIED.

3. Within five (5) business days after receipt of wire transfer instructions from the Pegaso Equity Holders, the Reorganized Debtors shall return to the Pegaso Equity Holders an

amount equal to $329,000 that was deposited into the Debtors' bank account on or about May 26, 2020.

4. Within five (5) business days after receipt of wire transfer instructions from the Pegaso Equity Holders, counsel to the Reorganized Debtors, Genovese Joblove & Battista, P.A., shall return to the Pegaso Equity Holders an amount equal to $329,000 that was deposited into such counsel's trust account on or about May 27, 2020.

5. In the event the Pegaso Equity Holders do not provide wire transfer instructions as set forth above within ten (10) business days after the date hereof, then the Reorganized Debtors and counsel to the Reorganized Debtors may elect to deposit the above referenced funds into the registry of this Court in satisfaction of this Court's Order herein.

# # #

**Submitted by (and as amended by the Court):**
Paul J. Battista, Esq.
Genovese Joblove & Battista, P.A.
Counsel to Reorganized Debtors
100 SE 2nd Street, 44th Floor
Miami, Florida 33131
(Telephone) 305-349-2300
(Fax) 305-349-2310
pbattista@gjb-law.com

Copy to: Paul J. Battista, Esq.
(Attorney Battista is directed to serve a conformed copy of this Order on all parties in interest)