UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICA-CV STATION GROUP, INC. | Case No. 19-16355-LMI |
| CARIBEVISION HOLDINGS, INC. | Case No. 19-16359-LMI |
| AMERICA-CV NETWORK, LLC | Case No. 19-16976-LMI |
| CARIBEVISION TV NETWORK, LLC | Case No. 19-16977-LMI |
| Debtors. _____/ | (Jointly Administered Under Case No. 19-16355-BKC-LMI) |

**REORGANIZED DEBTORS' RESPONSE AND LIMITED OBJECTION TO PEGASO EQUITY HOLDERS' MOTION TO CREATE AND AUTHORIZE PROCEDURE TO COMPLY WITH MANDATE OF THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**

America-CV Station Group, Inc. ("Station Group"), Caribevision Holdings, Inc. ("Caribevision Holdings"), America-CV Network, LLC ("America CV-Network") and Caribevision TV Network, LLC ("Caribevision Network") (together the "Reorganized Debtors") submit this response and limited objection (this "Response") to the *Pegaso Equity Holders' Motion to Create and Authorize Procedure to Comply with Mandate of the United States Court of Appeals for the Eleventh Circuit* [ECF No. 376] (the "Pegaso Motion").[1]

1.  The Reorganized Debtors understand that the Eleventh Circuit has remanded this matter to the Bankruptcy Court to "fashion an equitable remedy consistent with [the Eleventh Circuit's] opinion." *See In re: American-CV Station Group, Inc.*, 56 F.4th 1302, 1314 (11th Cir. 2023). However, the Eleventh Circuit also stated "*we recognize that it has been over two years*

---

[1] By defining themselves as the "Pegaso Equity Holders," Pegaso Television Corp., Emilio Braun and Ramon Diez Barroso continue to perpetuate the false narrative that they each owned pre-petition equity interests in the two holding company Debtors, Caribevision Holdings and Caribevision Network. To be clear, Mr. Braun did not own any pre-petition equity in any of the Debtors and Mr. Diez-Barroso did not own any pre-petition equity in Caribevision TV Network, LLC. *See* Exhibit A (Ownership Chart) attached to the Case Management Summary, ECF No. 7, Case No. 19-16355.

1

*since these plans were confirmed and that they have been substantially consummated. In reversing the order granting the motion to modify the reorganization plans, we **assume** that it remains true today that effective judicial relief can be granted. But we leave the exact contours of that relief to the bankruptcy court in the first instance. Id.* at 1313 (emphasis added). By and through the Pegaso Motion, the so-called Pegaso Equity Holders (hereinafter, the "Pegaso Parties") seek to create and establish procedures ostensibly designed to assist this Court in fashioning an equity remedy consistent with the Eleventh Circuit's opinion. However, the procedures proposed by the Pegaso Parties are too restrictive and are focused solely on advancing the interests of the Pegaso Parties. Among other things, such procedures do not provide an opportunity for the Reorganized Debtors or Vasallo TV Group, LLC and Carlos Vasallo (collectively, the "Vasallo Group") to advance their independent views of the Eleventh Circuit's opinion, including, without limitation, whether any "effective relief" can be granted at all, and whether and to what extent an equitable remedy can be fashioned.[2]

2.  In fact, while the Pegaso Parties admit that they do not yet know what relief they will ultimately seek from this Court, the Reorganized Debtors expect that the Pegaso Parties will base any such relief on the mistaken argument that they are collectively now the owners of 65.8% of the post-confirmation equity interests in the Reorganized Debtors. As discussed below, the Eleventh Circuit's opinion did not direct or mandate a redistribution or reissuance of the new equity interests in the Reorganized Debtors to the Pegaso Parties.

---

[2] Without any factual basis or analysis whatsoever, the Eleventh Circuit merely "assumed" that effective relief can be granted. And while the Eleventh Circuit and the Pegaso Parties cite to the Order of the District Court denying the Reorganized Debtors' *Motion to Dismiss Appeal as Equitably Moot*, the District Court merely entered a paperless order and, *without any analysis or reasoning whatsoever*, concluded "that it would be possible to grant effective judicial relief to Appellants, if warranted." *See* Case No. 20-23120-DPG, Docket No. 31.

3. In fact, at bottom, the Eleventh Circuit concluded that the "*bankruptcy court erred in granting the debtor's modification without first requiring that the debtor provide the Pegaso Equity Holders with a revised disclosure statement and a second opportunity to cast a ballot.*" *Id.* at 1313-14. As a result, the Eleventh Circuit's reversal of the Modification Order[3] and reversal in part of the Confirmation Order[4] fails to address and leaves open several critical questions in regards to the status of the bankruptcy proceedings, including, without limitation, whether there are confirmed "Plans" in existence today,[5] what the terms of those confirmed "Plans" are, can the Reorganized Debtors amend those "Plans," and/or whether this Court simply needs to conduct another confirmation hearing after the Reorganized Debtors provide additional disclosure and give the Pegaso Parties a second chance to vote on such amended Plans.

4. Moreover, despite the fact that the Pegaso Parties sent two letters to Mr. Vasallo threatening him with claims for breach of fiduciary duty [*See* Exhibit A to the Pegaso Motion] and for civil theft [*See* Exhibit A attached hereto], importantly, the Pegaso Parties never sought a stay of the Confirmation Order or the Reorganized Debtors' obligations under the Plans. Accordingly, the Reorganized Debtors and Mr. Vasallo relied in good faith on the Confirmation Order and the lack of any stay in connection with the operation of the Reorganized Debtors' businesses and their compliance with the Plans, particularly after having substantially consummated the Plans on June 9, 2020. To that end, over the past three (3) years, Mr. Vasallo has steadfastly and successfully

---

[3] *Order Granting Emergency Motion To Make Non-Material Modifications To Debtors' Plans Of Reorganization Dated February 26, 2020* (the "Modification Order") [ECF No. 271],

[4] *Order Confirming Debtors' Plans of Reorganization, Dated February 26, 2020, As Modified* (the "Confirmation Order") [ECF No. 272].

[5] On February 26, 2020, the Debtors filed the following plans of reorganization (collectively, the "Plans"): (I) *Chapter 11 Plan Of Reorganization Proposed By America-CV Station Group, Inc.*, (II) *Chapter 11 Plan Of Reorganization Proposed By Caribevision Holdings, Inc.*, (III) *Chapter 11 Plan Of Reorganization Proposed By America-CV Network, LLC*, and (IV) *Chapter 11 Plan Of Reorganization Proposed By Caribevision TV Network, LLC*.

weathered a number of challenges as the chief executive officer and 100% indirect shareholder of the Reorganized Debtors since confirmation of the Plans in June 2020. Specifically, and among other things too numerous to mention, Mr. Vasallo, relying on the Confirmation Order and the absence of a stay:

a. Preserved over 200 middle class jobs at the Reorganized Debtors;

b. Timely advanced the entire $500,000 Equity Contribution (as defined in the Plans) when the Pegaso Parties failed and refused to do so;

c. Timely committed to the Exit Financing (as defined in the Plans) to the Reorganized Debtors in the amount of $1.6 million when the Pegaso Parties likewise failed and refused to do so;

d. Caused the Reorganized Debtors to satisfy all of their respective obligations under the Plans on the effective date of such Plans on June 9, 2020, which obligations equaled approximately $1.3 million, so that they could substantially consummate the Plans and quickly and successfully emerge from Chapter 11, including to avoid the negative stigma that competitors had created as a result of the bankruptcy filing;

e. Arranged and personally guaranteed a new $6.0 million loan from ABANCA USA, the Florida international bank branch of Abanca Corporacion Bancaria, S.A., a Spanish bank ("ABANCA") in December 2020 (the "ABANCA Loan") in order to refinance the existing mortgage loan from Banco Sabadell, S.A., who had a mortgage lien on certain commercial property owned by Orly Group, Inc., a non-debtor subsidiary of Caribevision Network, that was guaranteed by America-CV Network, LLC;[6]

f. Deposited substantial personal funds with ABANCA to collateralize the ABANCA Loan;

g. Advanced loans to the Reorganized Debtors from personal funds to avoid shutting down and liquidating their businesses;

h. Navigated and guided the Reorganized Debtors through the negative effects that the COVID pandemic had on their operations, including obtaining two PPP loans, each of which has been forgiven; and

---

[6] The property is part of a commercial condominium that is located at 13001 NW 107th Avenue, Hialeah Gardens, Florida 33018 ("Property"). The Reorganized Debtors operate their respective businesses out of the Property, and pay monthly rent to Orly Group, Inc. at a below market rate under a lease that has an 84-month term.

        i. Deferred his entire salary as the chief executive officer of the Reorganized Debtors since confirmation of the Plans in order to support the cash flow needs of the Reorganized Debtors.

5.      As outlined in part above, there has been a substantial change in circumstances over the past three (3) years with the Reorganized Debtors based on their good faith reliance on the finality of the Confirmation Order in the absence of a stay, which was never sought by the Pegaso Parties. In addition, the Reorganized Debtors (including their creditors and employees) are facing substantial uncertainty about their future due to the Eleventh Circuit's opinion. In particular, if the Eleventh Circuit's opinion ultimately results in a change of control over the Reorganized Debtors as the Pegaso Parties have asserted, then ABANCA has already advised that such change in control will result in a default under the ABANCA Loan, which could lead to ABANCA setting off against a substantial amount of cash collateral posted by Mr. Vasallo to secure the ABANCA Loan as well as pursuing a foreclosure action against the Property. ABANCA has made it clear that the ABANCA Loan was based primarily on Mr. Vasallo being the guarantor, and therefore foreclosure is a real possibility if he were no longer in control. In that event, the Reorganized Debtors would be required to shut down their operations because it would be cost-prohibitive to relocate. As a result of the risk of ABANCA exercising its remedies, the Reorganized Debtors and Mr. Vasallo have been considering implementing different potential solutions to solve this problem (which was caused by the Eleventh Circuit's opinion), while at the same time protecting the interests of the Reorganized Debtors. Rather than address these important and very real issues, the Pegaso Motion seeks to avoid them and instead limit the involvement of the Reorganized Debtors and the Vasallo Group solely to responding to any request for relief sought by the Pegaso Parties in a vacuum.

6. As is evident from the above and notwithstanding being threatened with litigation claims along the way, Mr. Vasallo was and continues to be instrumental in the ability of the Reorganized Debtors to remain in business since confirmation of the Plans. Without his efforts, commitment and substantial financial resources and backing during the last three (3) years, the Reorganized Debtors would have ceased operations and liquidated long ago. Moreover, as outlined above, based on the Eleventh Circuit's opinion, the Reorganized Debtors and Mr. Vasallo are facing even more challenges in their efforts to remain in business. As a result, any equitable remedy that the Court may fashion needs to take into consideration the above efforts of Mr. Vasallo and his personal commitment to the Reorganized Debtor's continued operations. In not seeking a stay of the Confirmation Order, the Pegaso Parties presumably wanted to reap the benefits of those efforts and commitments while their appeals were pending in the event they succeeded in such appeals, but on the other hand wanted (and may still want) to avoid all of the burdens and challenges faced by the Reorganized Debtors and Mr. Vasallo along the way.

7. The Reorganized Debtors assert that all of the above issues and questions, among others, need to be addressed and evaluated by the Court in determining whether an equitable remedy can in fact be fashioned, and, if so, what that remedy entails. The Pegaso Motion, however, wants to limit the process and inquiry solely to the relief the Pegaso Parties want to seek.

8. As outlined below, the Reorganized Debtors object to the procedures in the Pegaso Motion, and instead propose that the process be simplified and modified. First and foremost, the Reorganized Debtors believe that it is appropriate to take direction from the Court as to what information the Court requires in order to be in a position to comply with the Eleventh Circuit's mandate.

9. Second, the Reorganized Debtors do not oppose discovery being taken, and do not oppose a period of 120 days to complete any such discovery, provided that there is a reservation of rights to seek to extend that period by agreement or by motion, if necessary. However, at this point, the Reorganized Debtors assert that the Court does not need to pre-judge the scope of discovery or otherwise limit any applicable objections. To that end, any discovery should be done in accordance with the Federal Rules of Civil Procedure and the Bankruptcy Rules as such Rules are applied to a contested matter. Specifically, each side should be able to issue any discovery that they believe to be appropriate in respect of the issues before the Court and the relief that they may elect to seek, and the recipient of that discovery should be able to assert any and all objections that they believe appropriate. Moreover, there is no need or basis to shorten any response deadlines on discovery. This matter has already been pending for almost three (3) years and there is a great deal at stake, which requires careful consideration. The Reorganized Debtors fully expect and anticipate that the parties (who are each represented by sophisticated counsel) will engage in discovery in good faith and likewise work to resolve any discovery disputes before bringing them to the Court.

10. Third, the Reorganized Debtors assert that either party should be able to file any motions or requests for relief that they believe to be consistent with the Eleventh Circuit's mandate at any time. Depending on the relief sought, the Court can fashion a scheduling order that deals with an appropriate briefing schedule, provide for further discovery if needed, set oral argument and/or conduct evidentiary hearings. The Pegaso Parties should not be the only parties authorized to seek relief from the Court as currently proposed in the Pegaso Motion. In addition, the Pegaso Parties seek to limit the Reorganized Debtors to filing one response to the Pegaso Partiers "Request for Relief" within fifteen (15) days of it being filed. These proposed limitations are unreasonable

7

for a number of reasons, including because they prevent the Reorganized Debtors or the Vasallo Group from seeking their own forms of relief and also set artificial deadlines to respond to relief that is yet unknown.

11.     Fourth, the Pegaso Parties seek to create a schedule for legal briefing on a parallel schedule in the event the Court requires such briefing after the Pegaso Parties file their Request for Relief and the Reorganized Debtors respond.  Once again, these proposed limitations are unreasonable and not necessary at this stage of the proceedings.  The Reorganized Debtors propose that the Court address any required legal briefing and the schedule for any such briefing if and when applicable.

WHEREFORE, the Reorganized Debtors respectfully request that the Court deny the Pegaso Motion, enter an order consistent with this Response, and for such other and further relief as the Court deems necessary.

Dated:  April 14, 2023

                                      **VENABLE LLP**
*Counsel for the Reorganized Debtors*
100 Southeast Second Street, Suite 4400
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310

By:     /s/ *Paul J. Battista*
       Paul J. Battista (FBN 884162)
       pjbattista@venable.com
       W. Barry Blum (FBN 379301)
       bblum@venable.com

## **EXHIBIT A**

## **CIVIL THEFT LETTER**

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
TAIWAN
BOSTON
HOUSTON
AUSTIN
HANOI
HO CHI MINH CITY

# DuaneMorris®

*FIRM and AFFILIATE OFFICES*

PHILLIP M. HUDSON III
DIRECT DIAL: +1 305 960 2273
PERSONAL FAX: +1 305 397 2443
E-MAIL: PMHudson@duanemorris.com

*www.duanemorris.com*

SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN
*A GCC REPRESENTATIVE OFFICE
OF DUANE MORRIS*

ALLIANCES IN MEXICO
AND SRI LANKA

February 16, 2022

**VIA FEDEX**

Vasallo TV Group, LLC
Carlos Vasallo
1001 Brickell Bay Drive
Suite 2700
Miami, Florida 33131

Vasallo TV Group, LLC
Carlos Vasallo
13001 NW 107th AVE
Hialeah Gardens, Florida 33018

Re:  Civil Theft Demand Pursuant to Florida Statute § 772.11(1)

Dear Mr. Vasallo:

As you are aware, this firm represents Emilio Braun, Ramon Diez Barroso, and Pegaso Television Corp. (collectively, the "**Interest Holders**"). I write to you in connection with the Interest Holders' equity interests (the "**Equity Interests**") in the reorganized Caribevision Holdings, Inc. and reorganized Caribevision TV Network LLC (collectively, the "**Caribevision Entities**") and your misappropriation of those Equity Interests through fraudulent schemes, breaches of fiduciary duties, conversion, false pretenses, or otherwise.

The Interest Holders were entitled to the Equity Interests in the Caribevision Entities as reorganized pursuant to the Chapter 11 plans of reorganization in the Chapter 11 bankruptcy cases (jointly administered under Case No. 19-16355-BKC-AJC) in the United States Bankruptcy Court for the Southern District of Florida ("**Bankruptcy Case**"), and specifically, based on the Interest Holders making an Equity Contribution payment as defined and set forth in the plans.[1] However,

---

[1] The Interest Holders' respective Equity Interests in each of the Caribevision Entities was to be as follows: (i) Ramon Diez Barroso – 50.1%, (ii) Pegaso Television Corp. – 11.9%, and (iii) Emilio

DUANE MORRIS LLP
201 SOUTH BISCAYNE BOULEVARD, SUITE 3400   MIAMI, FL 33131-4325         PHONE: +1 305 960 2200   FAX: +1 305 960 2201
DM3\8457124.1

DuaneMorris

February 16, 2022
Page 2

through your willful and deliberate actions, you and your wholly owned entity, Vasallo TV, abrogated the terms of the Chapter 11 plans and improperly seized the Equity Interests for Vasallo TV and yourself. Specifically, you, on behalf of yourself and Vasallo TV, fabricated deadlines and erected baseless impediments to the Interest Holders receiving their new equity interests in the reorganized Caribevision Entities by using a false "default" as a pretext to cause Vasallo TV to fund the entire Equity Contribution required in the plans. Further, in dereliction and abuse of your capacity as the Caribevision Entities' "authorized representative" in the Bankruptcy Case, you stripped the Interest Holders of their equity interests in the Caribevision Entities (as reorganized) and transferred 100% of the Equity Interests to your wholly owned entity, Vasallo TV, all with full knowledge and understanding of such theft. In short, you and Vasallo TV misappropriated these Equity Interests and converted them for your own use.

The Equity Interests were illegally obtained and used by you and Vasallo TV within the definition and terms of Florida's Theft Statutes, Florida Statute §§ 812.012 and 812.014, and you and Vasallo TV are liable under the aforementioned statutes.

Please consider this letter a demand for the return of the Equity Interests pursuant to Florida Statute 772.11(1) and for treble damages based on the value of the Equity Interests as such amounts may be established. As provided for by this statute, you and Vasallo TV will have thirty (30) days from receipt of this letter within which to comply with the demand herein and avoid the Interest Holders' claim for civil theft under Florida Statute 772.11(1) in connection with the taking of the Equity Interests. If you comply, a written release will be provided as set forth in the statute.

If you have any questions, you or your attorney may contact me.

Please govern yourself accordingly.

Very truly yours,

*s/ Phillip M. Hudson III*

Phillip M. Hudson III

Cc:  Marcell Felipe, P.A.
     1001 Brickell Bay Dr
     Suite 2730
     Miami, FL 33131

---

Braun – 3.8%. The 34.2% balance of the equity in the Caribevision Entities was to issue to Vasallo TV Group, LLC ("**Vasallo TV**").