*Tagged opinion*



**ORDERED in the Southern District of Florida on September 6, 2023.**

**Laurel M. Isicoff**
**Chief United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

IN RE:                                    Chapter 11

AMERICA-CV STATION GROUP, INC.            CASE NO. 19-16355-LMI
CARIBEVISION HOLDINGS, INC.               CASE NO. 19-16359-LMI
AMERICA-CV NETWORK, LLC                   CASE NO. 19-16976-LMI
CARIBEVISION TV NETWORK, LLC              CASE NO. 19-16977-LMI

                    Debtors.             (Jointly Administered Under
_____/         No. 19-16355-BKC-LMI)


### ORDER GRANTING *EX-PARTE* JOINT MOTION TO DETERMINE APPLICABILITY AND EXTENT OF PRIVILEGES FOR DOCUMENTS LISTED ON PEGASO EQUITY HOLDERS' PRIVILEGE LOG

This matter came before the Court upon the *Ex-Parte Joint Motion to Determine Applicability and Extent of Privileges for Documents Listed on Pegaso Equity Holders' Privilege Log* (ECF #438) (the "Motion") filed by America-CV

Station Group, Inc., Caribevision Holdings, Inc., America-CV Network, LLC, and Caribevision TV Network, LLC (the "Reorganized Debtors") and Pegaso Television Corp., Emilio Braun, and Ramon Diez Barroso (the "Pegaso Equity Holders"). The Parties[1] ask this Court to review the Pegaso Equity Holders' assertions of attorney-client and work product privilege related to a select subset of documents on the Pegaso Equity Holders' Privilege Log.[2]   The Reorganized Debtors object to and dispute the claim by the Pegaso Equity Holders that the following documents listed on the Privilege Log are covered by either the attorney-client privilege or the work product doctrine: Nos. 1, 2, 4 – 18, 19, 21, 22– 24, 25, 27, 28, 29, 32-34, 47, 51, 53, 54, 61, 73, 94, 98, 128, 129, and 130 (the "Disputed Privileged Documents"). The Court has reviewed the Motion[3] and also the Disputed Privileged Documents *in camera.*

## Attorney-Client Privilege

"The Eleventh Circuit requires three essential elements to establish the existence of an attorney-client privilege. First, it must be shown that an individual made a confidential communication to an attorney. Second, the communication must be made to an attorney in his professional capacity. Third, the purpose of the communication must be to secure legal advice or assistance."

---

[1] All capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.
[2] On May 18, 2023, the Reorganized Debtors served their *First Set of Requests for Production of Documents* to the Pegaso Equity Holders. On June 19, 2023, the Pegaso Equity Holders served their *Objections and Responses of the Pegaso Equity Holders to Reorganized Debtors' First Set of Requests for Production of Documents*, along with the Privilege Log.
[3] The Court thanks and commends counsel for the manner in which the Motion was prepared. The time and effort required to present both sides of each factual and legal argument with respect to each category of Disputed Privileged Documents reflects highly on all counsel involved, and illustrates the level of professionalism to which all attorneys should aspire.

*In re Stickle,* 2016 Bankr. LEXIS 314, at *9 (Bankr. S.D. Fla. 2016); *see also United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir. 1991). "Courts generally agree that the attorney-client privilege in the corporate context applies only to communications made for the purpose of obtaining legal advice. With that in mind, the fact that an attorney is copied with a written communication among nonlawyers does not make the communication privileged." *Welch v. Regions Bank* (*In re Mongelluzzi*), 568 B.R. 702, 713-14 (Bankr. M.D. Fla. 2017). To the extent an attorney is included on any communication or document, there is no attorney-client privilege, unless it is established that the attorney was necessary to the communication in his or her capacity as the attorney. *See Wyndham Vacation Ownership, Inc. v. Reed Hein & Assocs.*, 2019 U.S. Dist. LEXIS 231848, at *40 (M.D. Fla. 2019). The burden of proof is with the party asserting the privilege. *Jackson v. Gen. Electric Capital Corp.* (*In re Fundamental Long Term Care, Inc.*), 509 B.R. 387, 395 (Bankr. M.D. Fla. 2014). To satisfy this burden, the movant must demonstrate with facts—not mere assertions—that the attorney-client privilege exists. *Stickle*, 2016 Bankr. LEXIS 314, at *9. The privilege is not absolute and, thus, should be "construed as narrowly as is consistent with its purpose." *United States v. Noriega*, 917 F.2d 1543, 1551 (11th Cir. 1990).[4]

---

[4] The Court reviewed the deposition testimony of Mr. Diez-Barroso attached to the Motion and finds that the testimony, together with the information included in the Motion and the contents of the Disputed Privileged Documents, sets forth sufficient facts to allow a judicial determination as to whether the attorney-client privilege exists and whether the Pegaso Equity Holders have satisfied their burden of proof.

The Pegaso Equity Holders assert that all communications involving Fernando Calles, a Mexican attorney who they assert represents, and did represent at all material times, Pegaso Television Corp., Emilio Braun, and Ramon Diez-Barroso with respect to any issues related to the Reorganized Debtors, are privileged pursuant to the attorney-client privilege. Relevant to the dispute regarding the Disputed Privileged Documents, in addition to being counsel to the Pegaso Equity Holders, Mr. Calles was also a member of the Reorganized Debtors' board of directors (the "Board") prior to late May 2020.

The Reorganized Debtors argue: (1) Mr. Diez-Barroso's recent deposition testimony is evidence that Mr. Calles was not acting as a lawyer, but rather as the designated agent for Mr. Diez-Barroso for all business matters and decisions; and (2) because Mr. Calles was also a member of the Board, that he acted as a business person in addition to any legal advice he may have provided and, consequently, that communications with Mr. Calles in his business capacity are not protected by the attorney-client privilege. The Pegaso Equity Holders argue that the communications with Mr. Calles were intended to be, and were, made with respect to Mr. Calles' position as attorney.  Just because Mr. Calles was also a member of the Board and may have been involved in business decision-making for the Pegaso Equity Holders, they argue, does not compromise the privilege if the communication could constitute both legal advice and business strategy.

The Court reviewed the deposition testimony of Mr. Diez-Barroso and disagrees with the Reorganized Debtors' interpretation of that testimony.

4

Throughout the deposition, Mr. Diez-Barroso always referred to Mr. Calles as his attorney. The Court recognizes that Mr. Calles also acted as a representative for company matters, but that does not eliminate his role as attorney to Mr. Diez-Barroso and the Pegaso Equity Holders.  Contrary to the argument of the Reorganized Debtors, Mr. Calles' dual role does not disqualify the privilege of *any* communication.  Therefore, the Court finds that, to the extent the communications otherwise qualify, the attorney-client privilege applies to communications that include, or are directed to, or initiated by, Mr. Calles.

However, the attorney-client privilege does not extend to *every* communication involving Mr. Calles, even if there was an expectation of confidentiality.  The only protected communications are those that were made to Mr. Calles in his professional capacity and for the purpose of securing legal advice. *See Jackson,* 509 B.R. at 395 (discussing the applicability of the attorney-client privilege in the corporate context and that such privilege applies only to communications made for the purpose of securing legal advice). To determine whether a specific communication is protected by the attorney-client privilege, the resolution must be made on a case-by-case, a document-by-document basis. *See Stickle*, 2016 Bankr. LEXIS 314, at *14 (citing *Int'l Horizons, Inc v. The Comm. of Unsecured Creditors* (*In re Intl'l Horizons, Inc.*)*,* 16 B.R. 484, 488 (N.D. Ga. 1981)). Accordingly, the Court reviewed *in camera* each of the communications at issue.

5

The Court finds that the documents contained in Privilege Log Nos. 8, 9, 11-15, 17, 18.[5], 23, 24, and 94 are protected by the attorney-client privilege because in each of these communications it is clear that each was made for the purpose of securing, or Mr. Calles was providing, legal advice of some sort. On the other hand, the documents contained in Privilege Log Nos. 1, 2, 4-7, 10, 16, 21, 22, 25, and 27-29 are not subject to the attorney-client privilege because the purpose of these communications was not to secure legal advice.

### **Work Product Privilege**

The work product doctrine is codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure, made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7026. In relevant part, Rule 26(b)(3) states:

> (A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> > (i) They are otherwise discoverable under Rule 26(b)(1); and
>
> > (ii) The party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) Protection Against Disclosure. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3).

---

[5] Privilege Log Nos. 17 and 18 includes Privilege Log No. 16 but it is not possible to determine whether document 17 or 18 is the duplicate of 16.

Rule 26(b)(3) shields as work product (1) any document or tangible thing, (2) prepared in anticipation of litigation, (3) that was created ***by or for a party***, or for his representatives. *See Bridgewater v. Carnival Corp.*, 286 F.R.D. 636, 639 (S.D. Fla. 2011). "With regard to determining whether documents were prepared 'in anticipation of litigation,' the law is clear that if documents are prepared for a business purpose - or for some other non-litigation purpose - they fall outside the protection of the work product doctrine. . . . The law is equally clear that documents prepared by counsel or parties, or by their representatives, in specific preparation for a filed lawsuit, are protected work product." *Wyndham Vacation*, 2019 U.S. Dist. LEXIS 231848, at *44-45. "The application of the doctrine becomes difficult for those documents generated somewhere in the middle of the spectrum." *Bridgewater*, 286 F.R.D. at 641.

Courts have developed different tests to determine whether a document should be given the protection of the work product privilege. Judge Jonathan Goodman provides an excellent overview of the different tests:

> Under the primary purpose test, a document is deserving of work product protection as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation. Under the dual purpose test, dual-purpose documents are protected from disclosure if, taking into account the facts surrounding their creation, their litigation purpose so permeates any non-litigation purpose that the two purposes cannot be discretely separated from the factual nexus as a whole. . . . In addition to using the primary purpose and dual purpose tests, other courts have sometimes used other tests, such as the "because of" test. Under that test, material used for business purposes does not lose work product protection if it was created because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation. . . . In the Eleventh Circuit, contrary to most circuits (which follow the "because of" test),

7

district courts have mostly either used the primary purpose or dual purpose test.

*Goosby v. Branch Banking & Trust Company,* 309 F. Supp. 3d 122 1233 (S.D. Fla. 2018) (internal citations and quotations omitted).  Although several courts, including in the *Goosby* case, have stated that the Eleventh Circuit has not yet adopted a test, this Court disagrees.  In *United States v. Davis,* 636 F.2d 1028, 1040 (5th Cir. 1981) the former Fifth Circuit wrote:

> It is admittedly difficult to reduce to a neat general formula the relationship between preparation of a document and possible litigation necessary to trigger the protection of the work product doctrine. We conclude that litigation need not necessarily be imminent, as some courts have suggested, as long as the primary motivating purpose behind the creation of the document was to aid in possible litigation.

(internal citations omitted). This has become known as the "primary purpose test." Since, in accordance with *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981, this Court finds it is bound to apply the primary purpose test. *See Wyndham Vacation,* 2019 U.S. Dist. LEXIS 231848 at *45-46 (applying the primary purpose test after determining that *Davis* was binding).[6] Under the primary purpose test, "the question becomes whether the purportedly privileged documents were prepared with the primary motivating purpose of aiding in possible litigation." *Id.*

---

[6] Neither Party briefed or even mentioned the fact that there are differing tests to determine the scope of the work product privilege and, consequently, did not provide any basis for this Court to depart from this standard.

8

The Reorganized Debtors argue, among other things: (1) that any documents not created by an attorney are not subject to work product privilege; and (2) any documents created not just for litigation, but for litigation as well as any other purpose, the work product doctrine does not apply. The Reorganized Debtors cite to *United States v. Jimenez,* 265 F. Supp. 3d 1348, 1351 (S.D. Ala. 2017) for the proposition that "the law of this Circuit is that materials prepared by a client are not protected by the work product doctrine."  However, as the Pegaso Equity Holders correctly point out, the *Jimenez* court expressly stated that its decision, in a criminal action, regarding the work product doctrine did not rest on Rule 26(b)(3)(A). *See id.* n.6 ("While Civil Rule 26(b)(3)(A) incorporates the attorney work-product doctrine discussed in...*Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), the work-product doctrine exists independent of Civil Rule 26(b)(3)(A), and neither party has shown why this Rule of Civil Procedure should apply in this criminal case.") (emphasis in original) (internal citations and quotations omitted). The Reorganized Debtors' reliance on *Jimenez* is misplaced; this is a civil case and Rule 26 does apply. *See, e.g., Prime Prop. and Cas. Ins. v. Kepali Grp., Inc.,* 2022 WL 18781022, * 2 (S.D. Fla. 2022) (quoting and citing *In re Zantac* (*Ranitidine*) *Pro. Liability Litig.*, 2021 WL 2907850, at *3 (S.D. Fla. 2021)) ("work product also includes materials prepared by a party in anticipation of litigation, even without the input of counsel."). Consequently, the Court finds that party communications are subject to the work product privilege and all communications must be viewed through the lens of the primary purpose test.

After reviewing the Disputed Privileged Documents *in camera,* the Court

finds that the documents contained in Privilege Log Nos. 32-34, 61, and 98 are

protected by the work product privilege because they were created by or for a

party or a party's representative and were prepared in anticipation of litigation.

With respect to the documents contained in Privilege Log Nos. 128-130, only

conversations taking place after the May 28, 2020 decision granting the

Modification Order and Confirmation Order, which initiated the direct litigation

between the Parties, are subject to the work product privilege. The Pegaso Equity

Holders argue that the relationship between Carlos Vasallo/Vasallo TV and the

Pegaso Equity Holders were *always* antagonistic, and therefore, the Court

should view *all* the communications through the lens of anticipated litigation.

However, this Court finds that up until the May 28 "event" the parties were

working towards a common purpose no matter how strained their relationship.

Because May 28, 2020 is the date that initiated direct litigation between the

Parties, any communications prior to that date were not prepared with the

primary motivating purpose of aiding in future litigation. Lastly, the documents

contained in Privilege Log Nos. 47, 51, 53, 54, and 73 are protected by work

product privilege because "the primary motivating purpose behind the creation

of the document was to aid in possible litigation."[7]

The Court, for the foregoing reasons,

---

[7] A party can still seek to discover a work product document so long as it shows a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii); *Wyndham Vacation,* 2019 U.S. Dist. LEXIS 231848, at *20. If and at such time as the Reorganized Debtors seek such relief, the Court shall address them.

**ORDERS AND ADJUDGES** as follows:

1.      With respect to the Reorganized Debtors' objections to the Pegaso Equity Holders' assertions of attorney-client privilege for the documents listed as Numbers 1, 2, 4-19, 21-25, 27-29, and 94 on the Privilege Log, the Court **OVERRULES** the objections as to Numbers 8, 9, 11-15, 17, 18, 23, 24, 94 and **SUSTAINS** the objections as to Numbers 1, 2, 4-7, 10, 16, 21, 22, 25, 27-29[8];

2.      With respect to the Reorganized Debtors' objections to the Pegaso Equity Holders' assertions of work product privilege for the documents listed as Numbers 32-34 and 98 on the Privilege Log, the Court **OVERRULES** the objections[9];

3.      With respect to the Reorganized Debtors' objections to the Pegaso Equity Holders' assertions of work product privilege for the documents listed as Number 61 on the Privilege Log, the Court **OVERRULES** the objections[10];

4.      With respect to the Reorganized Debtors' objections to the Pegaso Equity Holders' assertions of work product privilege for the documents listed as Numbers 128 and 129 on the Privilege Log, the Court **OVERRULES IN PART** and **SUSTAINS IN PART** the objections as follows: **OVERRULES** the objections as to any document sent after May 28, 2020 and **SUSTAINS** the objections as to any document sent prior to May 28, 2020;

---

[8] The Court makes no ruling as to Number 19 because the document was not translated.

[9] Because the Court has overruled the objections based on the work product privilege, the Court makes no ruling with respect to the asserted attorney-client privilege.

[10] Because the Court has overruled the objections based on the work product privilege, the Court makes no ruling with respect to the asserted attorney-client privilege.

5.      With respect to the Reorganized Debtors' objections to the Pegaso Equity Holders' assertion of work product privilege for the documents listed as Number 130 on the Privilege Log, the Court **OVERRULES IN PART** and **SUSTAINS IN PART** the objections as follows: **OVERRULES** the objections as to any document sent after May 28, 2020 and **SUSTAINS** the objections as to any document sent prior to May 28, 2020;

6.      With respect to the Reorganized Debtors' objections to the Pegaso Equity Holders' assertions of work product privilege for the documents listed as Numbers 47, 51, 53, 54, and 73 on the Privilege Log, the Court **OVERRULES** the objections.

###

Copies to:
Paul J. Battista, Esq.
Phillip M. Hudson, III, Esq.
Morgan L. Swing, Esq.

*Attorney Battista  is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF, and file a proof of such service within two (2) business days from entry of the Order.*

12